**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HILARYS RIVERA, | : | CASE NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NUVANCE HEALTH MEDICAL PRACTICES, | : | |
| | : | |
| Defendant. | : | FEBRUARY 9, 2024 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under the Americans with Disabilities Act ("ADA") as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq*, Connecticut General Statues, and Connecticut State Law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. The Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission in Charge No. 16A-2022-00450 against the Defendant on October 4, 2023.

7. Plaintiff received a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities in Charge No. 2220206 against the Defendant on September 29, 2023.

**PLAINTIFF**

8. The Plaintiff, Hilarys Rivera ("Plaintiff" or "Rivera"), is a natural person and resident of the City of Bridgeport, Fairfield County, and State of Connecticut.

**DEFENDANT**

9. The Defendant, Nuvance Health Medical Practices ("Defendant" or "Nuvance"), is a New York corporation registered to do business in the State of Connecticut, and conducts substantial business within the State of Connecticut, having a principal place of business located at 24 Hospital Avenue, Danbury, Connecticut 06810 and operating a location at 333 Post Road W, Westport, CT, 06880.

10. Defendant employs more than fifteen (15) employees.

**FACTUAL ALLEGATIONS**

A. **Rivera's Exemplary Performance.**

11. Rivera began working for Nuvance as a Medical Assistant in May 2017.

12. Rivera worked at Nuvance's facility located at 333 Post Road W, Westport, CT, 06880.

13. Throughout her employment, Rivera had always performed the duties of her position in a satisfactory manner and had never been disciplined for performance-related issues.

-2-

**A. Rivera Takes FMLA Leave for Disabilities and Receives Cancer Diagnosis.**

14. Rivera suffers from depression and stress.

15. Rivera's medical conditions, including depression and stress, substantially limited one or more of her major life activities, including but not limited to working.

16. Rivera has a record of her medical conditions, including depression and stress.

17. Rivera notified Nuvance of her medical conditions.

18. Nuvance was aware of Rivera's medical conditions.

19. Nuvance perceived Rivera to have a physical and/or mental impairment.

20. On November 4, 2020, Rivera was required to take medically necessary leave under FMLA and CT FMLA as a result of her medical conditions.

21. At all times herein, Nuvance had fifteen or more employees.

22. At all times herein, Nuvance had one or more employees in Connecticut.

23. Nuvance was a CT FMLA-eligible employer.

24. On November 4, 2020, Rivera worked for Nuvance for more than three months.

25. Rivera was a CT FMLA-eligible employee.

26. Rivera provided documents from her doctor to support her request for FMLA and CT FMLA.

27. Rivera applied for and was approved to take medical leave from November 4, 2020 through February 23, 2021.

28. On November 21, 2020, Rivera was diagnosed with cancer.

29. Rivera's cancer substantially limited one or more of her major life activities, including but not limited to working.

30. Rivera had a record of medical conditions, including depression, stress, and cancer.

31. Rivera notified Nuvance of her recent diagnosis of cancer.

32. Due to the seriousness of her health condition and prolonged treatment regimen that included chemotherapy, Rivera had to be on leave for a longer period of time.

33. Rivera informed Nuvance of the need for an extended leave.

34. Rivera requested an accommodation for her cancer, in the form of an extension of her medical leave.

35. Rivera's request for accommodation was reasonable.

36. Rivera's request for accommodation would not have caused Nuvance undue hardship.

37. Nuvance offered FMLA leave and short-term disability leave to their employees.

38. Manager for Leave Administration, Lorena Lima ("Lima,") worked with third-party vendors to provide FMLA, disability leave, and disability accommodations to employees.

39. Lincoln Financial ("Lincoln") administered Nuvance's FMLA leave.

40. Matrix Absence Management, Inc. ("Matrix") administered Nuvance's short-term disability leave and disability accommodations.

41. On February 25, 2021, Rivera received a letter from Matrix ADA Specialist Ryan Timper ("Timper,") on behalf of Nuvance.

42. Timper's letter stated that documentation was required from Rivera by March 11, 2021, in order for Nuvance to decide whether to grant her a leave of absence.

43. On March 12, 2021, Timper sent Rivera a letter stating that Rivera's accommodation request was closed.

44. Timper's letter stated, "Until we receive the previously requested information or documentation, we are closing our file on your accommodation request and will not take any further action."

45. Timper's letter clearly stated that Matrix would take no further action *until previously requested information was received.*

46. Rivera believed that submitting documentation would re-open her disability accommodation request.

47. On March 23, 2021, Office Manager Kay Brown ("Brown") contacted Rivera to advise her that Rivera's job was being posted so that others could apply for Rivera's job.

48. Brown and Nuvance were aware of Rivera's disabilities.

49. Brown and Nuvance were aware of Rivera's request for accommodation.

50. Nuvance posting Rivera's job indicated that Nuvance did not intend to engage in the ADA 'interactive process.'

51. Nuvance posting Rivera's job indicated that Nuvance was planning on terminating Rivera.

52. Prior to this telephone call, Rivera did not receive any notification from Nuvance regarding the possibility of Rivera being terminated.

53. When Brown and Rivera discussed Rivera's request for medical leave, Rivera informed her that she was not aware that FMLA and short-term disability were different and thus did not know that additional documentation was required.

54. Brown told Rivera that Brown was also unaware that they were different.

55. Brown advised Rivera to contact the ADA specialist handling her case to find out what was needed to reopen her case.

**B. Rivera Engages in the ADA Required Interactive Process; Nuvance Does Not.**

56. On March 23, 2021, Rivera contacted Timper to discuss the paperwork issue.

57. Timper did not answer the phone, so Rivera left a detailed voicemail.

58. Timper, however, failed to return Rivera's telephone call.

59. On March 26, 2021, Rivera contacted Timper again.

60. Timper instructed Rivera to send the disability paperwork and then they would reopen her case.

61. On March 26, 2021, Rivera informed Timper of her cancer diagnosis.

62. On March 26, 2021, Rivera also spoke with Nuvance's Human Resources department ("HR.")

63. Rivera informed HR that she was not aware that short-term disability and FMLA were different and she still had to submit paperwork for the separate short-term disability leave.

64. HR advised Rivera that her job had already been posted.

65. HR instructed Rivera to find out her estimated return to work date from her doctor to find out if there was anything she could do.

**C. Rivera Submits Required Documentation for Accommodation, But Nuvance Still Terminates Her.**

66. On March 30, 2021, Rivera's health care provider then faxed her medical documentation to Timper at the confidential fax number that Timper provided to Rivera.

67. In early April 2021, Rivera received a letter from Lima dated March 31, 2021.

68. Lima's letter stated that Rivera's FMLA leave ended on February 23, and that an ADA claim was initiated but denied because she failed to provide requested documentation.

69. Lima's letter included incorrect information, including that the ADA claim was denied and that Rivera did not provide requested documentation.

70. Lima's letter stated that Rivera's position had been posted.

71. Lima advised Rivera that, "if you are released to return to work after your job has been filled but prior to you being out for 6 months, you will be allowed 30 days to attempt and find another position within the organization. Otherwise, your employment will terminate once you have been out for 6 months."

72. Llima's letter provided no specific deadline for the calculation of the six-month timeframe.

73. Lima's letter did not state when the time would be counted when calculating whether Rivera had been "out for six months."

74. Lima's letter was ambiguous.

75. Rivera believed that Lima's letter referred to Rivera's disability-accommodation-related leave.

76. After receiving Lima's letter, Rivera requested that her health care provider send her documentation to Matrix a second time.

77. Rivera's health care provider again faxed the medical documentation on April 6, 2021.

78. In April 2021, Rivera spoke with HR and explained that she would be completely finished with her chemotherapy treatment in September.

79. Rivera provided a definitive return to work date within the timeframe contemplated by HR's letter.

80. Rivera's return to work date was within the six-month absence period implied by Lima's letter.

81. HR told Rivera that a September return date was "too far away."

82. HR told Rivera that Nuvance would not be able to accommodate her.

83. This was completely contrary to what Nuvance's March 31 letter stated.

84. Rivera was not afforded an opportunity to apply for other positions within Nuvance's company.

85. These inconsistencies in Nuvance's communications AND Nuvance's haste in terminating Rivera demonstrated Nuvance's discriminatory attitude toward Rivera on the basis of her medical conditions and need for accommodations.

86. On April 29, 2021, Nuvance terminated Rivera.

87. On May 10, 2021, Rivera returned to the office to retrieve her personal belongings.

88. While Rivera was retrieving her belongings, Brown told Rivera that she could not speak with anyone at the office.

89. Brown told Rivera that she was no longer an employe and not a patient of Nuvance.

90. Brown told Rivera to "just pack [her] things and go."

91. Brown then stood near Rivera and watched Rivera's every move as Rivera packed up her desk.

92. Brown then walked Rivera out and refused to allow Rovera to say goodbye to anyone.

93. Rivera believed that she was being treated in an unfair manner.

94. Brown and Nuvance's treatment of Rivera further shows Nuvance's disparaging attitude toward Rivera.

95. Under the ADA, once an employer becomes aware of an employee's disability and need for accommodation, the employer must engage in an "interactive process" designed to "identify and implement appropriate reasonable accommodations." *Humphrey v. Mem'l*

-8-

*Hosps. Ass'n,* 239 F.3d 1128, 1137 (9th Cir. 2001). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Humphrey*, 239 F.3d at 1137.

96. "Several courts have held that when an employer contributes to the breakdown in the interactive process, that contribution will preclude summary judgment for the employer, even if the employee is also blameworthy. … The court thus considers not whether defendant was the sole cause, but, instead, whether a reasonable juror could conclude from the summary judgment facts that defendant contributed meaningfully to the breakdown in the interactive process." *Norwood v. UPS, Inc.,* No. 19-2496-DDC-JPO, 2021 U.S. Dist. LEXIS 132597, at *30 (D. Kan. July 16, 2021.)

97. Furthermore, according to the EEOC guidelines, "Leave as a reasonable accommodation is consistent with this purpose when it enables an employee to return to work following the period of leave. … An employer must consider providing unpaid leave to an employee with a disability as a reasonable accommodation if the employee requires it…. That is the case even when. the employer does not offer leave as an employee benefit; the employee is not eligible for leave under the employer's policy; or the employee has exhausted the leave the employer provides as a benefit (including leave exhausted under a workers' compensation program, or the FMLA or similar state or local laws)."

98. Here, Rivera engaged in the ADA 'interactive process,' after Rivera learned that additional documentation was required, she immediately communicated with Matrix and Nuvance and provided her medical paperwork.

99. Nuvance, however, failed to consider Rivera's request and supporting documentation and was determined to separate her employment.

100. Not only did Nuvance fail to meaningfully participate in the "interactive process" to provide necessary accommodations, Nuvance in fact obstructed the ADA-required interactive process, contributing to its breakdown.

101. Rivera was terminated only two months after her FMLA rights exhausted.

102. Rivera was terminated just weeks after Rivera participated in the protected activity of submitting the documentation for her extended leave in March.

103. Temporal proximity may serve as circumstantial evidence of retaliation, *see, e.g., Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995),

104. The Second Circuit Court of Appeals has found that such proximity can establish causality, *see*, *Espinal v. Goord*, 558 F.3d 119, 129-30 (2d Cir. 2009) (causal connection present where six months passed between protected activity and retaliation).

105. There was a short temporal proximity between Rivera's March 23, 2021, March 31, 2021, and April 6, 2021 requests for an ADA accommodation in the form of an extended medical leave and Rivera's termination on April 29, 2021.

106. There is a causal connection between Rivera's request for disability accommodations and Nuvance's termination of Rivera.

107. As a result of Nuvance's discrimination, failure to accommodate Rivera's disabilities, and retaliation, Rivera has suffered damages.

# COUNT ONE

## DISABILITY DISCRIMINATION,
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,
## 42 U.S.C. § 12101 et seq.

108. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-107 with the same force and impact as if fully set forth herein.

109. Plaintiff was diagnosed with depression, stress, and cancer.

110. Plaintiff's medical conditions substantially limited one or more of her major life activities, including but not limited to working.

111. Plaintiff has a record of her medical condition.

112. Plaintiff is disabled.

113. Plaintiff notified Defendant of her medical conditions.

114. Defendant perceived Plaintiff to be disabled.

115. In the alternative, Defendant perceived Plaintiff to have a physical impairment.

116. Plaintiff was at all times qualified for the position she held.

117. Defendant discriminated against Plaintiff, including but not limited to, failing to engage in an interactive process regarding Plaintiff's request for disability accommodations, denying Plaintiff's request for disability accommodations, and terminating Plaintiff.

118. Plaintiff suffered adverse employment actions, including, but not limited to termination on April 29, 2021.

119. Defendant's conduct violated 42 U.S.C. § 12101 et seq. by discriminating against Plaintiff, retaliating against Plaintiff, failing to accommodate Plaintiff, and terminating Plaintiff on April 29, 2021.

120. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

121. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 et seq.

122. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-121 with the same force and impact as if fully set forth herein.

123. Plaintiff requested accommodations for her disability, including but not limited to extended medical leave.

124. Plaintiff's request for accommodation was medically necessary.

125. Plaintiff's request for accommodations for her disability was reasonable.

126. Plaintiff requested reasonable accommodations for her disabilities,

127. Plaintiff's requested accommodations would not have caused Defendant an undue hardship.

128. Defendant failed to engage in an interactive process to determine accommodations for Plaintiff.

129. Defendant denied Plaintiff's request for reasonable accommodations.

130. Defendant's conduct violated 42 U.S.C. § 12101 et seq. by discriminating against Plaintiff, retaliating against Plaintiff, failing to accommodate Plaintiff, and terminating Plaintiff.

131. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

132. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

### COUNT THREE

### DISABILITY RETALIATION
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,
### 42 U.S.C. § 12101 et seq.

133. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-132 with the same force and impact as if fully set forth herein.

134. The Plaintiff participated in protected activities by requesting disability accommodations.

135. Defendant retaliated against Plaintiff by, including but not limited to, failing to engage in an interactive process with regard to Plaintiff's request for disability accommodations, denying Plaintiff's request for accommodations, and terminating Plaintiff on April 29, 2021.

136. Among the factors that motivated Defendant's actions were Plaintiff's disabilities.

137. Defendant's conduct violated 42 U.S.C. § 12101 et seq. failing to engage in an interactive process with regard to Plaintiff's request for disability accommodations, denying Plaintiff's request for accommodations, and terminating Plaintiff on April 29, 2021.

138. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance,

emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

139. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

### DISABILITY DISCRIMINATION, IN VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)

140. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-139 with the same force and impact as if fully set forth herein.

141. Plaintiff was diagnosed with depression, stress, and cancer.

142. Plaintiff's medical conditions substantially limited one or more of her major life activities, including but not limited to working.

143. Plaintiff has a record of her medical condition.

144. Plaintiff is disabled.

145. Plaintiff notified Defendant of her medical conditions.

146. Defendant perceived Plaintiff to be disabled.

147. In the alternative, Defendant perceived Plaintiff to have a physical impairment.

148. Plaintiff was at all times qualified for the position she held.

149. Defendant discriminated against Plaintiff, including but not limited to, failing to engage in an interactive process regarding Plaintiff's request for disability accommodations, denying Plaintiff's request for disability accommodations, and terminating Plaintiff.

150. Plaintiff suffered adverse employment actions, including, but not limited to termination on April 29, 2021.

151. Defendant's conduct violated Conn. Gen. Stat. § 46a-60(b)(1) by discriminating against Plaintiff, retaliating against Plaintiff, failing to accommodate Plaintiff, and terminating Plaintiff on April 29, 2021.

152. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

153. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FIVE

### DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE, IN VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)

154. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-153 with the same force and impact as if fully set forth herein.

155. Plaintiff requested accommodations for her disability, including but not limited to extended medical leave.

156. Plaintiff's request for accommodation was medically necessary.

157. Plaintiff's request for accommodations for her disability was reasonable.

158. Plaintiff requested reasonable accommodations for her disabilities,

159. Plaintiff's requested accommodations would not have caused Defendant an undue hardship.

160. Defendant failed to engage in an interactive process to determine accommodations for Plaintiff.

161. Defendant denied Plaintiff's request for reasonable accommodations. Plaintiff requested reasonable accommodations for her disabilities, including but not limited to reduced hours or reduced responsibilities.

162. As such, Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(1).

163. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

164. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT SIX

### DISABILITY RETALIATION
### IN VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(4)

165. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-164 with the same force and impact as if fully set forth herein.

166. The Plaintiff participated in protected activities by requesting disability accommodations.

167. Defendant retaliated against Plaintiff by, including but not limited to, failing to engage in an interactive process with regard to Plaintiff's request for disability accommodations, denying Plaintiff's request for accommodations, and terminating Plaintiff on April 29, 2021.

168. Among the factors that motivated Defendant's actions were Plaintiff's disabilities.

169. As such, Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(4).

170. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

171. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT SEVEN

### RETALIATION AND INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER THE CT FMLA, CONN. GEN STAT. § 31-51pp

172. Plaintiff hereby incorporates Paragraphs 1-171 with the same force and impact as if fully set forth herein.

173. Defendant has more than one (1) employee in Connecticut.

174. Plaintiff worked for Defendant for more than three months.

175. Defendant is a CT FMLA-eligible employer.

176. Plaintiff is a CT-FMLA employee.

177. Plaintiff requested time off from work and submitted the documents to Defendant.

178. Defendant interfered with, restrained, and denied the exercise of Plaintiff's rights under the CT FMLA, and/or retaliated against her for exercising her rights under the CT FMLA, in violation of Conn. Gen Stat. § 31-51pp.

179. Defendant interfered with and retaliated against Plaintiff for requesting job-protected leave in violation of the CT FMLA.

180. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

181. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT EIGHT

### RETALIATION AND INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER THE FMLA, 29 U.S.C. § 2612(A)(1) and 29 U.S.C. §2615(a)(1)

182. Plaintiff hereby incorporates Paragraphs 1-81 with the same force and impact as if fully set forth herein.

183. Plaintiff worked for Defendant for more than twelve months.

184. Plaintiff worked for Defendant for more than 1250 hours in the twelve months preceding his request for FMLA.

185. Defendant has more than fifty employees working within 75 miles of Defendant's location.

186. Defendant is a FMLA-eligible employer.

187. Plaintiff is a FMLA employee.

188. Plaintiff requested time off from work and submitted the documents to Defendant.

189. Defendant interfered with, restrained, and denied the exercise of Plaintiff's rights under the FMLA, and/or retaliated against her for exercising her rights under the FMLA.

190. Defendant interfered with and retaliated against Plaintiff for requesting job-protected leave in violation of the FMLA.

191. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

192. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

### PRAYER FOR RELIEF

Wherefore the Plaintiff prays that this court award:

1. Money damages;
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;
4. Pre-judgment interest
5. Trial by jury; and
6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
HILARYS RIVERA

By: _____/s/_____
Michael C. McMinn (#*ct27169*)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

COUNSEL FOR PLAINTIFF